## COMMERCIAL STANDARD INS. CO. v. DE HART.

### No. 1158.

Court of Civil Appeals of Texas. Waco.

March 3, 1932.

Rehearing Denied April 7, 1932.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Armstrong & Armstrong, of Bryan, for appellee.

GALLAGHER, C. J.

This suit was instituted by appellee, Tom De Hart, in the district court against appellant, Commercial Standard Insurance Company, to set aside an order of the Industrial Accident Board awarding him compensation for partial disability resulting from personal injuries sustained while employed by the Bryan Amusement Company, and to recover compensation payable in a lump sum for total disability which he alleged resulted from such injuries. Appellant was the insurance carrier of said company. The case was submitted on special issues, in response to which the jury found that appellee was totally disabled as the result of a fall; that the injuries sustained in such fall would be permanent; and that manifest hardship and injustice would result to appellee unless compensation was paid in a lump sum. Appellant having theretofore paid appellee forty-five weekly installments of $20 each, amounting in the aggregate to $900, and having further agreed that unmatured installments should be discounted at the rate of 6 per cent. per annum, the court rendered judgment against it in favor of appellee for the sum of $6,092.00, with interest from the date thereof at the rate of 6 per cent. per annum.

### Opinion.

Appellant presents an assignment of error in which it complains of the refusal of the trial court to instruct the jury peremptorily to return a general verdict in its favor. The specific contention urged under said assignment is that appellee, at the time he received his injuries, was not employed in the usual course of the business or occupation of his employer. The Bryan Amusement Company, hereinafter called the company, the corporation by which appellee was employed at the time of his injuries, owned and shortly prior thereto had operated, three picture shows. The company decided to suspend the operation of one of said shows and remodel the building in which it was operated. The work done was extensive, costing approximately $25,000, and continuing for a period of three months or more. The company employed the architect, the foreman, and the laborers who did the work. Carpenters, bricklayers, painters, electricians, and common laborers were employed during the course of the work. The company applied to appellant's local agents for a workmen's com-

pensation policy to cover such work. It held at the time a policy issued by appellant covering the operation of its picture shows. This policy was a continuous one. Whether appellant undertook to cover the company's remodeling operations by a new policy, or under the old policy by indorsement thereon or otherwise, is not shown. The company left all its insurance policies with appellant's agents, one of whom held a large incumbrance on its properties. When the company called for its compensation policy or policies, none could be found, but appellant admitted at the trial that such company had a statutory standard compensation policy in force at the time appellee was injured. The company's president testified that appellant's agent or representative, at or shortly after the beginning of the work of remodeling, and before appellee sustained his injuries, came to the building while the work was in actual progress, checked the labor employed, and prepared a pay-roll report, which he signed. Said report was introduced in evidence and showed in addition to a large sum paid to employees engaged in operating its shows, also certain sums paid to employees engaged in carpentry and masonry. The premium rate on the sums so paid was also specified and the gross premium for each stated therein. Said witness further testified that the premiums so charged were promptly paid to appellant. Shortly thereafter appellee, who was employed at the time as a carpenter in the work of remodeling, sustained severe personal injuries in the course of such employment.

"Employee," as that term is used in the Workmen's Compensation Act, is defined therein as follows: " 'Employee' shall mean every person in the service of another under any contract of hire, express or implied, oral or written * * * except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer." Rev. St. 1925, art. 8309, § 1. There is nothing in the whole act which can be reasonably construed to limit the right of any person or corporation to engage in any trade, business, profession, or occupation embraced within the terms of the act and by complying with its provisions, secure the benefits thereof, regardless of whether such person or corporation is at the time engaged in some other trade, business, profession, or occupation or not. Neither is there anything in such act which can be reasonably construed to restrict such benefits to such persons or corporations as have an established trade, business, profession, or occupation at the time the protection of such act is invoked. The fact that the Bryan Amusement Company, appellee's employer, had theretofore been engaged in operating picture shows and continued to operate a part of such shows, and had theretofore carried and continued to carry for its protection compensation insurance covering such business or occupation, was no bar to its engaging in the business or occupation of remodeling one of its buildings and availing itself of the protection of the act while so engaged. This is what the amusement company did. It applied to appellant for such insurance. The work being done was inspected by appellant's agents, its character determined, the kind of labor and the amount paid therefor listed, and the premiums for carrying such risks calculated. The amusement company paid such premiums to appellant. Under such circumstances, we think it wholly immaterial whether appellant's agents issued a new policy, or attached an indorsement or rider to its old policy extending its protection to said company while so engaged, or whether it did either. It was its duty under the facts stated, in some proper and effective way, to preserve said company's rights as a holder of compensation insurance covering the work of remodeling said building. The obligations assumed by appellant in the premises were contractual in their nature and inured not only to the benefit of the amusement company, but also to the benefit of appellee as its employee engaged in such work of remodeling. Southern Casualty Co. v. Morgan (Tex. Com. App.) 12 S.W.(2d) 200, 201, pars. 1 and 2. While appellee was so engaged he was employed in the usual course of the amusement company's business or occupation of remodeling such building, and was its employee within the definition of that term contained in said act.

This holding is not in conflict with the holding of the Commission of Appeals in Oilmen's Reciprocal Ass'n v. Gilleland, 291 S.W. 197, nor with the holding of this court in Texas Employers' Insurance Ass'n v. Sewell, 32 S.W.(2d) 262. In neither of said cases was the policy issued by the insurance carrier introduced in evidence. In the Gilleland Case the statement of facts merely recited that the City Laundry Company held a policy issued by said association insuring and indemnifying it against liability for injuries to its employees arising in the course of their employment. The employee for whose death compensation was sought was not, when he received the fatal injuries, engaged in any task usually incident to the business or occupation of operating a laundry. He was engaged as a brick mason in the construction of a new pumping plant, to be used on completion for increasing the facilities of such laundry. There was no contention or intimation that the laundry company had procured a policy indemnifying it against liability for injuries to its employees while engaged in constructing said pumping plant, nor that it had in any way contracted with said association for such indemnity. The court properly held in that case that such

900

brick mason was not employed in the usual course of the business or occupation of operating a laundry and that his statutory beneficiaries had no claim against the insurance carrier because he received injuries while so engaged while resulted in his death. In the Sewell Case, the employer was the Mexia Textile Mills and it was engaged in the business or occupation of making textile products. The statement of facts merely recited that the Texas Employers' Insurance Association was carrying workmen's compensation for said Mills. Sewell, when he received his injuries, was not engaged in any task usually incident to the business of manufacturing textile products. He was engaged in painting certain houses which the Textile Mills was erecting for occupancy by its employees. There was no contention or intimation that the Textile Mills had procured a policy indemnifying it against liability for injuries to its employees while engaged in constructing or painting such houses, nor that it had in any way contracted with said association for such indemnity. This court followed the Gilleland Case and held that Sewell was not employed in the usual course of the business or occupation of manufacturing textile products and that he was not entitled to recover against the insurance carrier on account of his injuries. The trial court did not err in refusing appellant's request for a peremptory instruction.

■ Appellant presents assignments of error in which it contends that the findings of the jury are insufficient to authorize or support the judgment rendered awarding appellee compensation for total permanent disability. The jury found that appellee was totally disabled as a result of a fall and that the injuries sustained by him in such fall will be permanent. Appellant did not object to the form in which such issues were submitted nor to the failure of the court to submit an issue inquiring whether appellee's total disability, as distinguished from his injuries, will be permanent. Such being the state of the record, the trial court will be deemed to have found in support of his judgment that appellee's total disability will be permanent, if such finding should be considered necessary. Beeman v. Georgia Casualty Co. (Tex. Com. App.) 41 S.W.(2d) 39, 41, par. 2. The issue of the permanency of total disability was submitted in substantially the same form as in this case in the following cases: Texas Indemnity Ins. Co. v. Holloway (Tex. Civ. App.) 30 S.W.(2d) 921, 927, par. 16, affirmed (Tex. Com. App.) 40 S.W.(2d) 75; Employers' Liability Assurance Corporation v. Williams (Tex. Civ. App.) 293 S. W. 210, 211 et seq.; Southern Surety Co. v. Lacoste (Tex. Civ. App.) 7 S.W.(2d) 197 et seq. (writ refused). Appellant's contention is overruled.

■■ Appellant presents assignments of error in which it contends that neither appellee's allegations on the subject of his prior average weekly wage nor the testimony introduced on such issue were sufficient to support the judgment rendered. Appellee alleged that his average weekly wage for the year previous to the date of his injury, as well as for several years prior thereto, was the sum of $46.15; that his weekly wage at the time of his injury was $44. Appellant presented a general demurrer, which was overruled. As against such demurrer appellee's allegations were sufficient. Davies v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 16 S.W.(2d) 524, 525, pars. 4 and 5; Southern Surety Co. v. Eppler (Tex. Civ. App.) 26 S.W.(2d) 697, 698, par. 4 (writ refused). Appellee testified that he was a carpenter and was working as such at the time he sustained his injuries; that he did not know how to do anything else except carpenter work and that he had no other means of earning a livelihood than working at that trade; that the amusement company was paying him $40 per week at the time of his injury and that that was the amount of his weekly wage for a year prior thereto. Both parties agreed in open court that appellant had prior to the trial paid to appellee forty-five weekly installments of compensation, amounting to the sum of $900. All the foregoing evidence was uncontroverted. No issue as to the amount of appellee's average weekly wage was submitted and none requested. The judgment rendered was calculated on the basis of compensation at the rate of $20 per week. The testimony is sufficient to sustain the same. Southern Surety Co. v. Eppler, supra, pages 697, 698, par. 5 of 26 S.W.(2d); United States Fidelity & Guaranty Co. v. Morgan (Tex. Civ. App.) 18 S.W.(2d) 810, 812, par. 2.

■ Appellant presents an assignment of error complaining of the refusal of the trial court to give its special requested instruction as follows: "You are instructed that you shall not consider for any purpose whatsoever, except in connection with the answers to special issue No. 3, any testimony offered in this case as to the permanent condition or permanent distress of the plaintiff and his family." Special issue No. 3 inquired whether manifest hardship and injustice would result to appellee if he were denied a lump-sum settlement. In support of such issue appellee testified that he was a married man; that he had children, some of whom were attending school; that he had no income of any kind and needed medical attention. The charge requested was affirmatively erroneous. The permanency of appellee's injuries or disability was a direct issue submitted to the jury for determination. The jury might well have understood this charge to include

testimony tending to establish such issue, rather than to apply exclusively to testimony with respect to the financial condition of appellee.

■ Appellant presents an assignment of error in which it contends the judgment of the trial court should be reversed because appellee's attorney, in his opening argument to the jury, used the following language: "Put yourself in his place. I hope none of you will ever be there; that is the sincere wish of mine." Appellant objected thereto in the following language: "We object to that." The court thereupon sustained said objection and instructed the jury to disregard said argument. No concrete application of such argument to any state of facts or issues involved in the case is shown. Neither is it shown to have been related to any other objectionable argument which might have tended to emphasize the same or conduce to a prejudicial application of the same by the jury in determining the issues submitted to them. We do not think it can be said that this abstract argument was reasonably calculated to prejudice the rights of appellant notwithstanding the court promptly condemned it and instructed the jury to disregard it. Hubb-Diggs Co. v. Bell, 116 Tex. 427, 428 et seq., 293 S. W. 808, 810, par. 4; Davis v. Hill (Tex. Com. App.) 298 S. W. 526, 527, par. 4, and authorities there cited; Ware v. Jones (Tex. Com. App.) 242 S. W. 1022, 1024, par. 4; Schmidt v. Houston Electric Co. (Tex. Com. App.) 242 S. W. 1019, 1021, par. 4; Robertson v. Trammell, 37 Tex. Civ. App. 53, 83 S. W. 258, 265, 266 (writ refused); Galveston, H. & S. A. Ry. Co. v. Contois (Tex. Civ. App.) 279 S. W. 929, 936, par. 21, affirmed (Tex. Com. App.) 288 S. W. 154; Rio Grande, E. P. & S. F. R. Co. v. Dupree (Tex. Civ. App.) 35 S.W.(2d) 809, 814, par. 5 (writ granted on other grounds); Engler v. Hatton (Tex. Civ. App.) 2 S.W.(2d) 519, 520, par. 2; Schnick v. Morris (Tex. Civ. App.) 24 S.W. (2d) 491, 498, pars. 12 and 13; King v. Riney (Tex. Civ. App.) 32 S.W.(2d) 278, par. 2; Galveston, H. & S. A. Ry. Co. v. Easton (Tex. Civ. App.) 257 S. W. 924, 926, par. 10. An examination of the cases cited by appellant in support of its contention will disclose that in each of the same the suggestion that the jury put themselves in the place of the injured party was more or less directly connected with other argument clearly improper, inflammatory, and prejudicial.

We have examined all appellant's assignments of error and have reached the conclusion that the matters presented thereby are insufficient to require or justify a reversal of the judgment in this case.

Such judgment is therefore affirmed.