TEXAS EMPLOYERS INS. ASS'N

v.

GRIMES.

No. 6700.

Court of Civil Appeals of Texas.

Texarkana.

May 6, 1954.

Rehearing Denied June 10, 1954.

Ramey, Calhoun, Brelsford & Hull, O. C. Funderburk, Tyler, for appellant.

Fulmer, Fairchild & Barnett, Nacogdoches, Stone & Stone, Jacksonville, for appellee.

FANNING, Justice.

This is a workmen's compensation case. Fredie E. Grimes, as an employee of Edwards Bros. Lumber Company, after an unsatisfactory award by the Industrial Accident Board, brought this suit to recover compensation in a lump sum for alleged total and permanent disability. Upon trial by jury, the court rendered judgment for the plaintiff based upon the verdict, awarding plaintiff lump-sum award for total and permanent disability (401 weeks) at the rate of $25 per week (less 10 weeks compensation at $22.40 per week paid by appellant to appellee), with statutory interest on matured installments and less statutory discount on the unmatured installments. The defendant, Texas Employers' Insurance Association has appealed.

All of appellant's points relate to the subject of average weekly wages. The statute principally involved in Vernon's Annotated Civil Statutes of Texas, article 8309, sec. 1, subsections 1, 2 and 3. For brevity, the parts of said statute will be referred to simply as subsec. 1, subsec. 2, and subsec. 3.

The jury in response to special issue No. 9 (relating to subsec. 1) found that appellee did work in the employment in which he was working at the time of the injury substantially the whole of the year immediately preceding the injury, etc. In response to special issue No. 10 the jury found that appellee's average daily wage which he earned during the days he was so employed was $7.50 per day. The jury did not answer special issues Nos. 11 and 12 (relating to subsec. 2) which were issues relating to the average weekly wages of other employees of the same class as Fredie E. Grimes, etc. The jury in response to special issue No. 13 (relating to subsec. 3) found that the sum of $45 per week would represent a fair and just average weekly wage, etc.

Appellant contends, among other things, that the evidence does not support the finding of the jury on special issue No. 9 that appellee worked substantially the whole of the year immediately preceding his injury. The term "substantially the whole of the year" has been defined as "exactly 300 days or close to, or near to 300 days." Petroleum Casualty Co. v. Williams, Tex.Com. App., 15 S.W.2d 553, 555; Traders & General Ins. Co. v. Slusser, Tex.Civ.App., 110 S.W.2d 598, error dism.; Federal Underwriters Exchange v. Bullard, Tex.Civ.App., 128 S.W.2d 126.

The case of Texas Employers' Ins. Ass'n v. Ebers, Tex.Civ.App., 134 S.W.2d 797, 799, holds that a workmen's compensation claimant who worked 260 days of the year immediately preceding his injury, did not "work substantially as much as 300 days" during the 12 month period immediately preceding his injury within the terms of the compensation act.

In Industrial Lloyds v. Denum, Tex.Civ. App., 160 S.W.2d 966, 967, (writ ref., w.m.) it is stated: "It cannot be said as a matter of law that 278 days amounts to 'substantially the whole of such immediately preceding year,' against the affirmative requirement of this section that the employee's average annual wage shall consist of 300 times the average daily wage."

In Travelers Ins. Co. v. Noble, Tex.Civ. App., 129 S.W.2d 778, 782, (dism.cor. judgm.) it was held that where an employee testified that he worked "around 285 days" during previous year, and punched a clock

during that time, thus indicating that an exact record of his working days could have been determined from employer, but employer did not produce such records, such testimony authorized finding that employee had worked substantially the whole of the year immediately preceding the injury. We quote from the court's opinion in this case as follows: " 'Q. How many days do you think you worked during the year? A. I never kept up with it, I would say around 285 days though. Q. Of course you punched a clock as to the time and the records would show? A. Yes, sir.' From the last answer, we can infer that the exact record of appellee's working days during the particular period could have been determined from his employer, but was not produced."

■ Appellee Grimes in response to the question as to how many days in logging that he put in for his employer for the year prior to his injury stated: *"Well, I would roughly say that it was somewhere between two seventy and two eighty, just roughly guessing at that more or less."* His counsel asked him further "You think it wouldn't be under two seventy and not over two eighty," and appellee replied: "No, sir, I don't believe it would." He further testified that he was 'drawing seven and a half' a day, and that he would draw the same pay for the extra time that he put in on Sundays 'for repairing bridges and things like that.'" Appellee also testified that he had worked "lots of Sundays" and worked "quite a number of Sundays"; that he did not log on Sundays and that when he worked on Sundays it would be "a check-up or preparation for continuing on (your) logging;" and that he received the same pay for the extra time he put in on Sundays. Appellee, however, did not testify as to how long or how many hours he worked on Sundays, nor whether he put in full days or part days, nor does he give any approximate number of the Sundays he worked. His evidence is somewhat speculative and is not as direct as the evidence of C. F. Mahner, the bookkeeper and payroll clerk of appellee's employer, who testified that the records of appellee's employer showed that appellee worked 260 days and 1½ hours as a logger for the employer during the 12 months period in question, and also the employer's written wage statement (Defendant's Exhibit No. 1) shows that appellee worked 260 days and 1½ hours during said period. No other persons (other than appellee and Mr. Mahner with the payroll records) testify as to how many days appellee worked for the employer during the 12 months period. It is our opinion that in view of the the speculative, indefinite and "rough guesswork" nature of appellee's testimony with its direct contradiction by the payroll records of the employer the evidence in this case does not support the jury's finding in response to special issue No. 9.

■ Appellant also contends, among other things, that the jury's findings with respect to special issue No. 13 of a just and fair average weekly wage rate under subsec. 3 cannot be supported under the record. The jury did not answer special issues Nos. 11 and 12, with respect to whether other employees had worked substantially a year, etc. (under subsec. 2). The case of American Employer's Ins. Co. v. Singleton, Tex. Com.App., 24 S.W.2d 26, holds among other things, that before a compensation claimant can resort to subsec. 2 claimant has the burden to show by competent evidence that it is impracticable to compute the average weekly wage under subsec. 1, and before resorting to subsec. 3 claimant has the burden of showing by competent evidence that it is impracticable to compute the average weekly wage under either subsections 1 or 2. We hold that the finding of the jury in response to special issue No. 13 to the effect that $45 per week would be a just and fair average weekly wage, etc., cannot be sustained under the record in this case.

Appellee by his fourth counterpoint (in reply to all of appellant's points) contends that if it be determined that plaintiff's compensation rate of $25 per week is not supported by the evidence, then plaintiff is en-

titled to judgment at the rate of compensation for which he received ten weekly payments from appellant, there being no pleading or proof on the part of the appellant that this rate was paid through mistake or that it was incorrect.

Defendant (appellant herein) pleaded in its first amended original answer in part as follows: "Further answering herein, defendant says that following plaintiff's alleged injury of July 5, 1951, it paid to plaintiff ten (10) weeks of workmen's compensation benefits at the compensation rate of $22.40 per week because of plaintiff's alleged injury sustained on said date, and by reason thereof this defendant is entitled to have any judgment which might be entered against it herein credited with the sum of two hundred twenty-four dollars ($224.00), the amount it has heretofore paid claimant for workmen's compensation benefits."

Appellee Grimes testified in response to questions of appellant's counsel that defendant paid him 10 weeks compensation amounting to $224, and the following stipulation was agreed to and dictated in the record by counsel for appellant: "Let the record show that it was agreed by the parties that the company paid compensation to plaintiff for ten weeks from and after his injury amounting to $224.00."

■ We have carefully searched the record and we do not find any claim of appellant that the payment by it to appellee of ten weeks compensation at the weekly rate of $22.40 (aggregating $224) was induced by fraud, accident or mistake or any effort to compromise. We think these facts would justify and authorize a recovery for appellee at the rate of $22.40 per week. Tex.Jur., vol. 45, p. 660, sec. 212; Texas Employers Ins. Ass'n v. Hamor, Tex.Civ. App., 97 S.W.2d 1041; Southern Underwriters v. Erwin, Tex.Civ.App., 134 S.W.2d 720; Traders & General Ins. Co. v. Slusser, Tex.Civ.App., 110 S.W.2d 598, error dism.; Texas Employers Ins. Ass'n v. McNorton, Tex.Civ.App., 92 S.W.2d 562, error dismissed in 132 Tex. 168, 122 S.W.2d 1043.

Under the record in this case a compensation rate of $25 per week for appellee cannot be sustained. However appellee is entitled to lump sum judgment against appellant for total and permanent disability (401 weeks) at the rate of $22.40 per week (less 10 weeks compensation amounting to $224 paid by appellant to appellee) with the statutory interest on matured installments and less the statutory discount on the unmatured installments, and the judgment of the trial court as modified upon the basis of the weekly compensation rate of $22.40 is affirmed.

Appellant's other points have been carefully considered and are overruled.

Affirmed as modified.